OPINION. Van Fossan, Judge: Section 215 of the Revenue Act of 1939 permits a corporation in an “unsound financial condition”[2] to exclude from its gross income the amount of any income attributable to the discharge, during the taxable year, of an indebtedness. To take advantage of this section a corporation which has discharged an indebtedness evidenced by a security, and filed a consent to the regulations prescribed by the section, either must prove to the satisfaction of the Commissioner that it was in an unsound financial condition during the period involved, or must have this fact certified to the Commissioner by any Federal agency authorized to make loans on behalf of the United States to such corporation or which has regulatory power over the corporation. Petitioner corporations had discharged an indebtedness evidenced by a security and had filed the required consent. No certification was made here by any Federal agency, and hence we are concerned only with the sufficiency of the petitioners’ proof that they were in an unsound financial condition during the periods for which the deficiencies were determined. The term “unsound financial condition” is at best a vague one. The statute does not define it, nor, we believe, can a general definition be formulated. Each case must necessarily rest upon its own facts. Section 19.22 (b) (9)-l, Regulations 103, provides in part: A corporation may be in an unsound financial condition, within the meaning of section 22 (b) (9) and this section, even though the fair market value of its assets exceeds its liabilities or it is able to meet its current liabilities as they mature. Thus, highly indicative (but not conclusive) of an unsound financial condition would be the fact that bonds of the taxpayer are selling in a free market at prices substantially below their issue price and below the market price of similar issues of similar businesses. These regulations were largely adapted from the Report of the House Ways and Means Committee on this section,[3] and are virtually in the language of the report. ' We deem the criteria prescribed by the regulations to be suggestive only, not exclusive of other tests. Adequately and accurately to gauge a condition as elusive and difficult of definition as that under consideration requires resort to every reasonably promising source of aid. What then is the present situation ? Tested by the above regulations, it is found that the proof establishes that petitioners’ bonds were selling substantially below their issuing price. To this extent the proof satisfies the regulations. However, more is required. There must be evidence of the market price of similar issues of similar businesses for the purpose fairly of comparing the market price of petitioners’ bonds with those of other companies similarly situated. Here we have some evidence of the market prices of the bonds of other companies, but the proof that these issues were similar is almost wholly lacking. . We have no evidence permitting us to say that any of these companies were proper comparatives. Thus petitioners fail to meet one of the tests found in the regulations. We turn then to other possible evidences indicative of petitioners’ financial condition. A study of petitioners’ balance sheet as presented to its stockholders does not, of itself, reveal an unsound financial condition. The ratio of fixed assets to bonded debt is not so disproportionate as to focus attention. On the contrary, the presence of a surplus of $12,000,000 among total liabilities of $60,000,000, in the absence of some circumstance lessening the weight normally to be given such fact, argues strongly against petitioners’ contention. We find no explanation minimizing the weight of this fact. There is the further fact that, excepting the series A and B bonds, petitioners have not been obliged to borrow any money since 1927. They have bought in large amounts of their own bonds and have made large purchases of new equipment, all out of current earnings. No adequate explanation is offered why dividends on preferred stock could not have been paid as they accrued, nor is there any evidence from which we could conclude that the valuation fixed by the Minnesota Railroad & Warehouse Commission for rate-making purposes is too high. These are all matters which might have been made the subject of testimony. When all of the above mentioned factors are considered, we find ourselves unable to hold that petitioners have proved that they were in an unsound financial condition in 1939. Reviewed by we Court. Decisions will be entered for the respondent. The necessity for proving a corporation to be in “an unsound financial condition” was eliminated from the statute by the Revenue Act of 1942. 1039 H. R. 855, 76th Cong,, 1st sess.